**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ikemefula Charles Ibeabuchi, | No. CV- 18-00238-PHX-SPL (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT JUDGE:

Petitioner Ikemefula Charles Ibeabuchi has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 14.)

## I.    Summary of Conclusion.

Petitioner raises four grounds for relief in his timely Petition. In 2003, Petitioner was sentenced to lifetime probation to run consecutively to a term of imprisonment. He signed for his probation terms at that time. Upon release from custody in 2015, he was asked to sign a form that "acknowledged" the terms of probation that were imposed in 2003.  Petitioner argues his rights were violated when he was asked to sign this form. Petitioner did not raise these claims in his direct appeal, so these claims are unexhausted and procedurally defaulted without excuse. Therefore, the Court will recommend that the Petition be denied and dismissed with prejudice.

**II.     Background.**

**a.      Factual and Procedural Background.**

This Court summarized the relevant prior proceedings:

In February 2003, Petitioner pleaded guilty to attempted sexual assault and sexual abuse in Maricopa County Superior Court in case CR 1999-095310. *State v. Ibeabuchi*, No. 1 CA-CR 16-0542, 2017 WL 5586968, at *1-2 (Ariz. Ct. App. Nov. 21, 2017). In *State v. Ibeabuchi*, the Court of Appeals recounted the procedural history of Petitioner's criminal case. It appears that in July 2002, Petitioner was convicted and sentenced to prison in Nevada. In February 2003, Petitioner pleaded guilty to attempted sexual assault and sexual abuse in Arizona. In May 2003, Petitioner was sentenced to two years in prison followed by lifetime probation. Petitioner signed the Uniform Conditions of Probation and acknowledged that all sex-offender terms would be imposed.

In February 2014, Petitioner was released from Nevada state prison and was transferred to the custody of Immigration and Customs Enforcement (ICE). In November 2015, ICE released Petitioner after the Nigerian government declined to issue him travel documents to return to Nigeria. That same month, Petitioner reported to the Maricopa County Adult Probation Department (APD) and reviewed the terms of his probation. Petitioner orally stated that he would comply with his probation conditions, but he refused to sign the Review and Acknowledgment for his conditions. Although Petitioner did not sign the Review and Acknowledgment, he attended all scheduled appointments with probation and registered as a sex offender.

In January 2016, Petitioner's probation officer requested a status conference in court to address Petitioner's refusal to sign the Review and Acknowledgment of his probation terms. Following the conference in February 2016, Petitioner signed the "Special Conditions of Probation," which included sex-offender terms.

On March 24, 2016, Petitioner's probation officer directed him in writing to schedule an intake appointment with psychological and consulting services for sex offender treatment by March 29, 2016. Following the March 24 meeting, Petitioner drove to his attorney's office and showed him the directive. Petitioner did not schedule an intake appointment and, on April 5, the State petitioned to revoke Petitioner's probation for violating Term 25 of his probation because he "failed to attend, actively participate and remain in sex offender treatment" and "failed to schedule an intake appointment ... by March 29, 2016." *Id.* Petitioner denied the alleged violation. A probation violation hearing was held in June 2016 and the court found by a preponderance of the evidence that Petitioner had violated Term 25 of his probation and that he had refused to comply with the written directive. At the disposition hearing, the court reinstated Petitioner's probation but also included intensive probation terms.

(Doc. 15 at 2-3.)[1]

---

[1] The Arizona Court of Appeals also summarized the procedural history. *See State v. Ibeabuchi*, 2017 WL 5586968, at *1 (Ariz. Ct. App. 2017)). The Court notes that this history is lengthy because Petitioner is a voluminous filer. He has filed 10 cases in this

**b.    Direct Appeal.**

On May 8, 2017, Petitioner filed an appeal of the reinstatement of his probation with the inclusion of intensive probation terms. (Doc. 21-3, Ex. WW, at 50.) Petitioner raised two claims. He first argued "that the court violated his right to counsel in finding that he violated his probation by consulting with his attorney before complying with probation's directive." (*Id*. at 51.) Petitioner also argued "that the court violated his due process rights by finding that he violated his probation by failing to comply with a directive when he believed the directive would require payment that he could not afford." *Ibeabuchi*, 2017 WL 5586968, at *2.

On November 21, 2017, the Arizona Court of Appeals affirmed Petitioner's disposition and sentence. (Doc.21-3, Ex. ZZ, at 160; *Ibeabuchi*, 2017 WL 5586968, at *2.)

On December 28, 2017, Petitioner filed for review before the Arizona Supreme Court. (Doc. 21-4, Ex. DDD, at 17.) Petitioner raised four additional claims (*id*. at 20-21), which are not the claims he raised in this Petition. On May 30, 2018, the court denied the petition for review. (Doc. 21-4, Ex. III, at 65.)

**c.    Petitioner's Federal Habeas Petition.**

On January 22, 2018, Petitioner filed a Petition. (Doc. 1.) On May 4, 2018, he filed an Amended Petition. (Doc. 9.) On May 29, 2018, he filed a Second Amended Petition. (Doc. 14.) The Court has summarized his claims as follows:

> In Ground One, Petitioner asserts that his May 14, 2003 sentence was violated by Judge Gates's re-signing on February 19, 2016 of the Uniform Conditions of Probation Condition 25, which violated Petitioner's Fourth, Fifth, Eighth, Eleventh, and Fourteenth Amendment rights. (Doc. 14 at 6.) In Ground Two, Petitioner alleges that community supervision was waived as to count 1 due to imposition of a term of probation, but was re-imposed by Judge Gates via Condition 21, thereby violating Petitioner's Fourth, Fifth, Eleventh, and Fourteenth Amendment rights. In Ground Three, he alleges that his conviction for sexual abuse was a "prohibited of re-signing after expiration of term sentence or exercise of term sentence," which violated Petitioner's Fourth, Fifth, Sixth, Eleventh, and Fourteenth Amendment rights. In Ground Four, Petitioner asserts that the May 14, 2003 sentencing order was expunged on April 1, 2015, by ICE and United States Citizenship and Immigration Services, when these agencies re-admitted Petitioner's October 4, 2004 removal order, which he contends is a ground for relief from

Court, and numerous cases in the Arizona courts. The Response alone contains 1472 pages of attachments.

judgment of conviction.4 Petitioner contends that his Fifth Amendment rights were thereby violated as a result of the asserted expungement.

(Doc. 4 at 2.) On November 9, 2018, Respondents filed a Response. (Doc. 21.) On October 14, 2018, Petitioner filed a Reply. (Doc. 22.)

**d.      Motion to Stay.**

On December 3, 2018, Petitioner filed a Motion to Stay the proceedings. (Doc. 23.) On December 6, 2018, Respondents filed a response opposing the stay. (Doc. 24.)

**III.    Standard of Review - Exhaustion.**

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See id.* at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178

(2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 U.S. at 731-32. Under these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting *Coleman*, 501 U.S. at 732). *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners and to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v.*

*Carrier*, 477 U.S. 478, 488-89 (1986)). "'[P]rejudice' is actual harm resulting from the constitutional violation or error." *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 n.13.

**IV.    Ground One.**

Petitioner alleges that his "due process, [] double jeopardy, cruel and unusual treatment, [and] breach of contract" rights were violated when the trial court "forcibly" coerced Petitioner to re-sign his probation conditions on February 19, 2016. (Doc. 14 at 6.) He argues that because "the re-signing, did not acknowledge Petitioner's Original Conditions signed: 5/9/2003" there was a violation of his Constitutional rights. (*Id*.)

As described above, in 2003, Petitioner was sentenced to a two-year term of imprisonment for Count Three of his Indictment (Sexual Abuse) to be followed by consecutive lifetime probation for Amended Count One (Attempted Sexual Assault). (Doc. 21-1, Ex. G, at 98.)[2] After serving the two-year prison term, he was transferred to Nevada to serve a term of imprisonment related to Attempted Sexual Assault and Battery. (Doc. 21-1, Ex. F, at 84.) After serving that term of imprisonment, he was transferred to ICE custody in February of 2014. (Doc. 15 at 2.) Upon release from ICE custody in November of 2015, Petitioner began probation supervision in Maricopa County under Amended Count One. (*Id*.) When he began probation supervision in 2016, he was asked to sign a form acknowledging the conditions of probation that were imposed in 2003. (Doc. 21-1, Ex. M, at 127-128.) After Petitioner initially refused to sign those conditions,

---

[2] Petitioner's plea agreement stipulated to lifetime probation with sex offender terms for Amended Count One. (Doc. 21-1, Ex. C, at 32.) On May 9, 2003, at sentencing, Petitioner signed a form listing his special conditions of probation, which included his sex offender terms. (Doc. 21-1, Ex. I, at 108.)

he appeared before the court on February 9, 2016 and agreed to sign the acknowledgement. (*Id.*) Petitioner subsequently violated a term of his probation but was reinstated to intensive probation by the court. (Doc. 21-2, Ex. EE, at 45.)

Petitioner did not raise the claim in Ground One in the Arizona Court of Appeals when he appealed this matter. Petitioner challenged his right to counsel and his obligation to pay a fee, but he did not raise this argument.[3] He admits he did not raise this claim. (Doc. 14 at 6.) He argues that he raised the issue "on April 20, 2018" in a "Post Trial Verdict Proceeding." (*Id.*) Petitioner's claim is unexhausted and procedurally defaulted without excuse.

Petitioner's claim is also meritless. Petitioner argues that his rights were violated when he re-signed his special conditions of probation on February 9, 2016. (Doc. 14. at 6.) But on February 9, 2016, Petitioner merely "acknowledged" the terms of probation that were previously imposed by the trial court at sentencing in 2003.[4] Moreover, at sentencing in 2003, the trial court imposed "Condition 25," which listed his "Special Conditions of Probation." (Doc. 21-1, Ex. I, at 108.) The 2016 probation violation notice specifies a violation of "Condition 25."[5] (Doc. 21-1, Ex. P, at 137.) Petitioner's probation violation was a result of a violation of a special condition of probation imposed as "Condition 25" in 2003. Nothing about the Petitioner's additional acknowledgement of his special conditions of probation changed his obligations regarding "Condition 25." To the contrary,

---

[3] Petitioner also did not raise this issue when he filed for review with the Arizona Supreme Court. As noted above, Petitioner added four additional claims in that petition but he did not raise this challenge. (Doc. 21-4, Ex. III, at 65.)

[4] Petitioner does not deny that he had notice of his special conditions of probation when they were imposed in 2003. At the change of plea proceeding, the court advised he would be placed on "lifetime probation" that "will include all sex offender terms." (Doc. 21-1, Ex. D, at 39.) His sentencing minute entry also noted "Condition 25- abide by the special conditions as noted on the attachments to the Terms and Conditions of Probation." (Doc. 21-1, Ex. G, at 100.)

[5] When Petitioner signed an acknowledgement of his terms in 2016, that form listed his special conditions "Pursuant to Uniform Condition 21." (Doc. 21-1, Ex. O, at 135.) Because the petition alleged a violation of "Condition 25" – and that is the number listed in his 2003 sentencing form – the listing of "Condition 21" in 2016 is irrelevant.

that additional acknowledgement of his special conditions of probation merely added additional proof that he knew the special conditions of his probation.[6]

## V.     Ground Two.

In Ground Two, Petitioner argues that "because, the re-signing [of probation terms on February 19, 2016] did not acknowledge Petitioner's original conditions signed [on May 9, 2003] without the 'Condition 21' therefore" violated Petitioner's Constitutional rights. (Doc. 14 at 7.) Petitioner appears to argue that "Condition 21" was not a part of his original terms of probation in 2003, and thus his rights were violated when he "re-signed" this condition in 2016.

Petitioner did not raise this claim to the Arizona Court of Appeals, so the claim is unexhausted and procedurally defaulted. Petitioner admits he did not raise this claim in that court. Petitioner presents no cause or prejudice to excuse the default.

Petitioner's claim is also meritless because he did not sign for probation terms in 2016. Instead, he merely acknowledged the terms of probation that were set in 2003. Because he had prior notice of those terms when they were imposed in 2003, and then was given renewed notice in 2016, there was no violation of his rights.

## VI.    Ground Three.

In Ground Three, Petitioner argues that his "sexual abuse, Count 3, Class 5, felony is prohibited of re-signing, after expiration of term sentence – or, exercise of term of sentence, to wit: Condition 20 [] which re-signing violated Petitioner's federal constitutional rights[.]" (Doc. 14. at 8.)

Petitioner did not raise this claim to the Arizona Court of Appeals, so the claim is unexhausted and procedurally defaulted. Petitioner presents no cause or prejudice to excuse the default.

Petitioner's argument is also meritless. Petitioner appears to argue that after he concluded his term of imprisonment for Count Three his term of probation could not be

---

[6] He also was not coerced into signing the form. At the February 19, 2016 hearing, Petitioner agreed he signed the 2003 terms of probation and stated he was willing to sign the new form as well. (Doc. 21-1, Ex. M, at 127-128.)

reinstated later. Here, Petitioner admits he concluded his term of imprisonment for Count Three in January 2007. (*Id*.) Petitioner was then sent to Nevada to serve a term of imprisonment. (Doc. 15 at 2.) Then, in 2015, after release from ICE custody, he began serving his term of probation for Amended Count One. The acknowledgement of his special conditions of probation on February 19, 2016 (for Count One) had no effect on Count Three. Also, Petitioner's reference to Condition 20 (to "[n]ot remain in or return to the United States illegally if deported or processed through voluntary departure") (doc. 21-1, Ex. G, at 99) is not relevant because he was not removed and did not depart the United States. Petitioner's claim fails.

**VII.   Ground Four.**

Petitioner argues that the "sentencing order filed May 14, 2003 was expunged on April 1, 2015, by the United States Citizenship and Immigration Services when the federal agency re-admitted by reinstatement the Petitioner's October 4, 2004 removal order." (Doc. 14 at 9.) He argues that his "sentencing order was jurisdictionally transferred to immigration …which invalidated Arizona's jurisdiction." (*Id*.)[7]

Petitioner did not raise this claim in the Arizona Court of Appeals, so the claim is unexhausted and procedurally defaulted. Petitioner admits his did not exhaust this claim. (*Id*.) Petitioner presents no cause or prejudice to excuse the default.

Petitioner's claim is also meritless because his lifetime term of probation was not "invalidated" by any decision of the immigration courts. Petitioner presents no authority to support his claim. Defendants are routinely placed on supervised release or probation and removed from the United States. The sentences in those cases are not invalidated upon a defendant's departure from the United States. Instead, defendants are still subject to those terms if they return to the United States and violate a court's orders. *See also Bush v. Gore*, 531 U.S. 98, 112 (2000) ("In most cases, comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law. That practice reflects our

---

[7] While Petitioner's claim regarding the effect of a 2004 removal order on his 2003 sentence is likely not timely, the Court need not address that issue because of the simplicity of the procedural default and merits analysis.

understanding that the decisions of state courts are definitive pronouncements of the will of the States as sovereigns."). In sum, the reinstatement of a removal order had no bearing on Petitioner's lifetime term of probation.

**VIII.  Motion to Stay.**

On December 3, 2018, Petitioner filed a Motion to Stay proceedings. (Doc. 23.) Petitioner requests a stay of the proceedings while other state post-conviction proceedings are pending. (*Id*. at 6.) He asserts that the state court should be allowed to "assess the claim of breach of contract by prosecutors of the plea agreement, as raised in Ground Four of the Petition, when the stipulation 'Condition 20' was carried out, by the federal government, in the 'removal order' which formed the conflict, for the 'Double Jeopardy Clause' of Petitioner's Fifth Amendment" rights. (*Id*. at 9.)  Respondents oppose a stay. (Doc. 24.)

The Court has discretion to stay proceedings in such circumstances. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). But a stay is appropriate "only in limited circumstances" where "there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id*. at 277. Petitioner presents no justification for his failure to exhaust his claims in the state courts.  Petitioner has not established good cause to impose a stay. Also, Petitioner agrees his Petition was filed due to the alleged "deprivation of his constitutional rights before Judge Pamela Gates on February 19, 2016 []." (Doc. 23 at 4.) The facts of that proceeding are well known to this Court. Petitioner's claims have absolutely no merit, so a stay would serve no purpose. *See Rhines*, 544 U.S. at 277 (holding that a stay is inappropriate if the claims subject to dismissal under § 2254(b)(2) are "plainly meritless"); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Blake v. Baker*, 745 F.3d 977, 981-82 (9th Cir. 2014) ("[R]outinely granting stays would undermine the AEDPA's goals of encouraging finality and streamlining federal habeas proceedings").

**CONCLUSION**

The record is sufficiently developed and the Court does not find that an evidentiary

hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are timely, but procedurally defaulted and meritless. The Court will therefore recommend that the Second Amended Petition for Writ of Habeas Corpus (doc. 14) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (doc. 14) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the Request for a Stay (doc. 23) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 27th day of December, 2018.

Honorable John Z. Boyle
United States Magistrate Judge